UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN BRENT DAVIS,<br><br>    Plaintiff,<br><br>    v.<br><br>EASTERN IDAHO HEALTH<br>SERVICES, INC, *d.b.a.* Eastern Idaho<br>Regional Medical Center,<br><br>    Defendant. | Case No. 4:16-cv-00193-BLW<br><br>MEMORANDUM DECISION AND<br>ORDER |

**INTRODUCTION**

The Court has before it Plaintiff's Motion to Compel (Dkt. 29) and the parties'

Joint Motion for Extension of Dispositive Motion and Mediation Deadlines (Dkt. 32).

The Court's staff attempted two mediation sessions that were partially successful, and the

parties then briefed their remaining disputes. For the reasons explained below, the Court

will grant in part and deny in part the Motion to Compel and grant the Joint Motion for

Extension.

**BACKGROUND**

This action is brought by John Brent Davis against his former employer, Eastern

Idaho Health Services Inc., d/b/a Eastern Idaho Regional Medical Center ("EIRMC").

Plaintiff alleges that he was wrongfully terminated when he failed to clock out to attend

doctor appointments related to a workplace injury. Plaintiff brings claims for employment

discrimination and retaliation under various federal statutes and Idaho common law.

Discovery in this case has been contentious and the subject of ongoing informal

mediation with the Court. Central to the parties' dispute is Plaintiff's requests for

comparator employee discovery, contained in the following requests for production:

> **REQUEST FOR PRODUCTION NO. 23:** Please produce any documents showing disciplinary action given to other employees for alleged time card violations within the last five (5) years.

> **REQUEST FOR PRODUCTION NO. 25:** Please produce any documents showing disciplinary actions taken within one year of an employee reporting a disability, making a worker's compensation claim, taking FMLA leave, and/or making a complaint regarding time card concerns for the last five (5) years.

Ulrich Decl., ¶ 3-4, Ex. A & B, Dkts. 29-3, 29-4. Defendant argues that the requests are

overbroad and unduly burdensome, asserting that it cannot search for such disciplinary

actions without great expense and that the request is not appropriately tailored to the

universe of similarly-situated employees.

Defendant also objects to three requests seeking production of employee email

correspondence, asserting that any search of company emails would be disproportionately

expensive. These requests include:

> **REQUEST FOR PRODUCTION NO. 12:** Please produce any documents, including email correspondence, that concern or discuss the factual allegations in Plaintiffs Complaint.

> **REQUEST FOR PRODUCTION NO. 17:** Please produce any documents related to worker's compensation claim made by Plaintiff, including but not limited to email correspondence regarding Plaintiff's claims.

**REQUEST FOR PRODUCTION NO. 24:** Please provide any correspondence, emails, or other documents provided to employees with worker's compensation claims regarding how to manage related medical appointments required during scheduled work hours.

*Id.*

On March 3, 2017, the Court conducted its first discovery dispute conference with the parties. Counsel agreed to a "test case" search of personnel files in the Imaging Department, where Plaintiff formerly worked. Counsel was unable to reach agreement on production of employee emails, but Defendant agreed to provide the Court and opposing counsel with an explanation of how its emails are stored and the accessibility of such files for electronic search, to substantiate its objections on cost grounds.

The Court conducted a second discovery mediation on April 4, 2017, after the test case search was completed, to discuss whether an expanded search outside the Imaging Department would be warranted. Additionally, the parties raised a new dispute concerning Plaintiff's request to depose Celia McKenzie and to produce certain notes from the investigation preceding Plaintiff's termination. The parties were unable to resolve their disputes during that conference, and the Court granted Plaintiff leave to file the present Motion to Compel. The matter is now fully briefed and ripe for disposition.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b), as amended effective December 1, 2015, provides that:

> "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in

controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Fed. R. Civ. P. 26(b)(1). Rule 26 contains more specific limitations on discovery of electronically stored information:

A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify the conditions for the discovery.

Fed. R. Civ. P. 26(b)(2)(B).

Pursuant to Rule 37, a party seeking discovery may move for an order compelling production by a party who has failed to answer an interrogatory or produce requested documents. Fed. R. Civ. P. 37(a)(3). While the moving party must make a threshold showing of relevance, *see, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978), the party resisting discovery carries the "heavy burden" of showing specifically why the discovery request is irrelevant, unduly burdensome, disproportional to the needs of the case, or otherwise improper. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). Further, "[t]his burden is a heavy one in employment discrimination lawsuits, where discovery rules are construed liberally so as to provide the plaintiff with 'broad access to the employers' records." *Lauer v. Longevity Med. Clinic, PLLC*, 2014 WL 5471983 at *3 (W.D. Wash. Oct. 29, 2014) (citations omitted).

## ANALYSIS

Plaintiff seeks an order compelling Defendant to produce: (1) certain portions of employee personnel files; (2) certain supervisor emails; (3) Celia McKenzie for deposition; and (4) notes taken during an interview of Ms. Celia McKenzie during a investigation of Plaintiff. As an alternative to the requested written discovery, Plaintiff requests permission to take a 30(b)(6) deposition. The Court addresses each request in turn.

### 1.    Employee Personnel Files

The withheld personnel files, or portions of files, requested by Plaintiff encompass employees both inside and outside Plaintiff's protected group. The Court begins by addressing the relevance of each type of employee file, then proceeds to the question of whether a company-wide search is proportional to the needs of this case.

#### A.    *Relevancy*

##### i.  Similarly-Situated Employees (RFP No. 23)

Plaintiff's Request for Production No. 23 seeks records of disciplinary actions taken against other EIRMC employees for time card violations. Plaintiff argues that the information will help establish that he was treated less favorably than "similarly situated" employees outside his protected class. Defendant does not dispute that disparate treatment evidence is relevant to unlawful termination claims, under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), but argues that only a small subset of EIRMC employees are truly "similarly situated." Defendant seeks to narrow the search to

employees that worked in the Imaging Department, under the same supervisor as Plaintiff, and engaged in intentional time card fraud.

The subset of comparator employees cannot be so narrowly defined. The Ninth Circuit has cautioned that the "similarly situated" inquiry is a flexible one. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1115 (9th Cir. 2011) ("It is not an unyielding, inflexible requirement that requires near one-to-one mapping between employees because one can always find distinctions.") (internal quotation omitted). Proper comparators should be similar "in all material respects," but what factors are relevant depends on a common-sense evaluation of the circumstances. *See Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010).

For example, similar job duties and title may be relevant in cases involving employee job performance. However, where employees are disciplined not for poor performance but for misconduct that violates a company-wide policy, differences in job function and rank are less material. *See, e.g., Rodgers v. White*, 657 F.3d 511, 518 (7th Cir. 2011) ("[W]hen uneven discipline is the basis for a claim of discrimination, the most-relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor," rather than job duties and rank). Here, Plaintiff was disciplined not for bad performance but for violating a company-wide time card policy. There is no evidence that the company took into account qualifications, duties, or job title when enforcing that policy. Thus, on the present record, the Court

concludes that all employees across EIRMC who were subject to the company time card policy are potential comparators.

Similarly, a common supervisor is a relevant factor in some but not all cases. The more critical inquiry is whether the disciplinary action involved the same decision-makers. Where personnel farther up the chain of command are involved, the fact that two employees do not share a direct supervisor becomes less relevant. *See, e.g.*, *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379 (2008) (rejecting the Tenth Circuit's categorical rule requiring comparators to share the same supervisor); *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157–58 (9th Cir. 2010) ("[W]hether plaintiffs and the female flight attendants shared the same direct supervisor should not have been determinative of whether they were similarly situated, because . . . the decision to terminate plaintiffs was made directly by Executive Jet's president[.]"). In this case, there is some evidence that EIRMC's Director of HR and CEO participated in the investigation and decision to terminate Plaintiff. *See Pl. Reply Memo* at 2, Dkt. 38. If true, all employees overseen by these decision-makers are potential comparators.

Defendant is correct that comparator employees must have engaged in violations of "comparable seriousness." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1115 (9th Cir. 2011). However, "precise equivalence in culpability between employees" is not required, as the Supreme Court made clear in *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n. 11 (1976). Plaintiff has limited his request to time card violations, a narrow category of problematic conduct. Moreover, the nature of Plaintiff's time card

violations—and whether they were of comparable seriousness to those of other employees—is a fact question more properly left for the jury. *See Beck v. United Food & Commercial Workers Union Local 99*, 506 F.3d 874, 885 n. 5 (9th Cir. 2007) ("We agree with our sister circuits that whether two employees are similarly situated is ordinarily a question of fact" for the jury); *see also Gordon v. United Airlines, Inc.*, 246 F.3d 878, 891 (7th Cir. 2001) ("[W]e are not bound by the labels that an employer uses and must scrutinize the conduct behind those labels to determine if they are applied to similar conduct. Such fact issues are the province of the jury.").

That leads the Court to a final, more general point: discovery requests at this stage of litigation cannot and need not be perfectly tailored to the subset of individuals that will ultimately be deemed "similarly situated" by a trier of fact. Doing so would pose an insurmountable hurdle to obtaining relevant comparator evidence and ignore the liberal construction of "relevancy" applied at the discovery stage. The Court concludes that all EIRMC employees who were subject to and violated EIRMC time card rules are potential comparators, and that personnel records of disciplinary actions taken against such employees are relevant to Plaintiff's claims.

### ii. Employees Within Protected Class (RFP No. 25)

Plaintiff's Request for Production No. 25 seeks records of disciplinary actions taken against EIRMC employees within a year of them reporting a disability, making a worker's compensation claim, taking FMLA leave, or making a complaint regarding time

card concerns. This request appears targeted not at "comparator" evidence but at "pattern or practice" evidence.

Prior acts of discrimination or retaliation against a protected class—often categorized as "pattern or practice" evidence—are undoubtedly relevant, as they can provide circumstantial evidence of an employer's improper motive or pretext. *See McDonnell Douglas*, 411 U.S. at 804–05. Defendant does not appear to dispute this point. According, the Court concludes that Request for Production No. 25 also seeks evidence relevant to Plaintiff's claims.

B.       *Proportionality*

The more difficult question is whether a company-wide search of employee personnel files is proportional to the needs of the case, considering the factors enumerated in Federal Rule of Civil Procedure 26(b)(1).

Here, four key factors weigh in favor of discovery. Most importantly, "disparate impact" or "pattern or practice" evidence is often the only way of substantiating a claim for discrimination or retaliation. As for the parties' resources, EIRMC is a large company able to bear the costs of such discovery. The company also has sole access to the requested documents. Finally, eliminating unlawful discrimination and retaliation is undoubtedly an issue of some importance.

On the flip side, the amount in controversy in this litigation is relatively small. Plaintiff estimates that his lost wages are $130,000. Moreover, the search will require a substantial expenditure of time and effort. According to Defendant, the Hospital does not

keep centralized records of disciplinary actions, and they are stored in both paper and electronic form. The only way to identify potentially responsive documents appears to be a manual collection and review of scattered electronic and hard copy files for the approximately 2,000 people the Hospital employed during the relevant period.

EIRMC conducted a test search of the approximately 120 employees in the Imaging Department in the three years prior to Plaintiff's termination to get a rough approximation of the costs and benefits of such discovery. This review required an estimated 78 hours of work, comprised of 31 hours for HR to identify, locate, and review files; 27 hours for an attorney to review files for responsive documents; and 20 hours of attorney and paralegal time for further review, redactions, and other management. The search produced 11 responsive disciplinary actions.

The Court is not insensitive to the costs involved in this search. However, it is largely a burden of EIRMC's own creation. EIRMC should not be excused from reasonable discovery obligations simply because records of its disciplinary actions are stored in a manner which prevents access. "Permitting a party to avoid discovery simply by keeping files in a disorderly or unsearchable manner would improperly benefit the producing party while precluding the requesting party from obtaining clearly relevant material." *Reid v. Cumberland Cty.*, 34 F. Supp. 3d 396, 414 (D.N.J. 2013).

Moreover, Defendant was unwilling to agree to a cost-shifting solution, under which Plaintiff would undertake the burden of manually reviewing the personnel files for relevant disciplinary actions, subject to an attorneys' eyes only protective order. This

solution would have shifted the majority of the work hours to Plaintiff. Defendant argued

that this solution would violate the hospital's HIPAA obligations. However, as the

hospital should no doubt be aware, HIPAA specifically allows for the disclosure of

protected health information during discovery. *See* 45 C.F.R. § 164(e) ("A covered entity

may disclose protected health information in the course of any judicial . . . proceeding: (i)

In response to an order of a court  . . . [or] (ii) In response to a subpoena, discovery

request, or other lawful process . . . if [covered by a qualified protective order].").

Finally, the Court is not convinced that the stated costs for the Imaging

Department search are disproportional to the benefit of the documents produced. The

Imaging Department search produced 11 responsive disciplinary actions, each of which

may provide insight into how comparable employees were disciplined for the same

conduct that allegedly led EIRMC to terminate Plaintiff. An expanded search will only

increase the likelihood that true comparators are found.

While the value of such evidence is high, the marginal benefit of each new

disciplinary action discovered will decrease as the search expands. Plaintiff also provides

insufficient justification for a search involving all hospital employees. Under the

circumstances, the Court finds that a review of employee personnel files for three (3)

additional departments is justified. The search shall be limited to a three (3) year time

span. The Court trusts that the parties can reach a compromise, without further court

intervention, as to which three departments are most likely to contain "similarly situated"

employees.

## 2.    Supervisor Emails

The second dispute involves Plaintiff's requests for production of emails. While the Requests for Production are broad, Plaintiff appears to have narrowed the request to a search of the emails of EIRMC supervisors under agreed-upon search terms. *Ulrich Decl.* at ¶ 15–18, Dkt. 29-2. Defendant does not object to this search on relevance grounds, but argues that a search of EIRMC's email files would entail undue cost.

Defendant has submitted an exhibit estimating the financial cost to perform the requested email search, under three methods:

- **Method 1: "Crowd-Sourcing."** This method would rely on an agreed-upon set of EIRMC supervisors to search their own Outlook email accounts using a defined set of search terms provided by counsel. Supervisors would produce these emails to counsel for review. This option would entail employee time but no third-party vendor costs.

- **Method 2: "DSi Collection."** This method would entail the forensic collection of supervisor emails from EIRMC's multiple enterprise email systems for subsequent search by a third party. This method would cost an estimated $750 per custodian for collection.

- **Method 3: "DSi Collection Plus."** This method would entail forensic collection of email files plus attachments, compressed files, and non-indexed content. This method could cost $750 per custodian for collection plus additional costs for filtering and processing.

The Court agrees that a search of the email files for all EIRMC supervisors, over 135 employees, would be disproportionate the claims here. The vended costs for a forensic search of these email files would far exceed $100,000. Limiting the search to a subset of supervisor custodians would reduce costs while allowing the most relevant email accounts to be searched. Under the circumstances, the Court finds that a search of

fifteen (15) custodians would be proportional to the needs of the case. The Court will allow the parties to agree upon the appropriate search method, search terms, and list of fifteen (15) custodians.

**3.      McKenzie Deposition**

Defendant previously disclosed the identity of two employees that were interviewed by Deb Barlow, Director of Medical Imaging, and Matt Campbell, Former Director of HR, as part of the hospital's internal investigation of Plaintiff which preceded his termination. During the April 30, 2017 deposition of Deb Barlow, Plaintiff learned for the first time that a third employee, Celia McKenzie, Manager of Radiology, was also interviewed. McKenzie was not previously disclosed as a potential witness. Plaintiff now seeks an order compelling Defendant to produce McKenzie for a deposition.

Defendant objects to the deposition with only an unsupported assertion that McKenzie is "marginally connected" to this case. However, McKenzie was one of a select handful of employees who appear to have been interviewed. The fact that Barlow and Campbell chose to interview McKenzie as part of their investigation of Plaintiff provides strong circumstantial evidence of her relevance to this case. Defendant's voluntary disclosure of Barlow's interviews of other employees supports the same. McKenzie will be able to speak to the nature of EIRMC's investigation, as well as the information requested and provided during her interview, all of which will provide circumstantial evidence of EIRMC's motivations in terminating Plaintiff.

The Court finds that McKenzie's testimony is relevant to issues of some importance in this case and that any burden or expense of the deposition does not outweigh its likely benefit. Accordingly, Plaintiff's motion to compel Celia McKenzie's deposition will be granted.

**4.      Meeting Notes**

Plaintiff objected to Defendant's failure to produce meeting notes taken by Matt Campbell during the interview with Celia McKenzie. Campbell testified at his deposition that he took such notes, but that he could not recall whether he took the notes with him when he left EIRMC, and that the notes are no longer in his possession. Clay England, Campbell's successor, also indicated that he has conducted an unsuccessful search for the notebook. Accordingly, the Court will deny Plaintiff's motion on this issue.

**5.      Rule 30(b)(6) Deposition**

Plaintiff requests a Rule 30(b)(6) deposition as an alternative to the discovery of personnel files and supervisor emails. Because the Court will compel additional discovery aimed at the same information, the Rule 30(b)(6) is likely to be duplicative and unduly burdensome. The Court will deny the request.

**6.      Joint Motion to Extend Deadlines**

The parties seek an extension of the April 14, 2017 dispositive motion deadline to accommodate the completion of any additional discovery. They also request that the April 28, 2017 deadline for mediation be extended to May 5, 2017, to accommodate their scheduled mediation date. The Court also finds good cause for the short extension of the

mediation deadline. The pendency of a discovery dispute will not ordinarily provide good cause for extending a dispositive motion deadline. However, given the nature of the disputed discovery here, failing to extend the dispositive motion would unfairly prejudice Plaintiff. Accordingly, the Court will grant both requests.

The discovery deadline in this case, originally set at March 16, 2017 and later extended to March 28, 2017, has expired. Plaintiff has not requested to reopen that deadline to accommodate the discovery sought in his Motion to Compel, as previously requested by the Court. *See* March 14 Order, Dkt. 27. The Court will therefore order that Plaintiff promptly submit a motion to extend the discovery deadline. The parties should agree upon an aggressive deadline for completion of all remaining discovery, to be proposed in that motion. The dispositive motion deadline shall be reset for three weeks following the new discovery deadline. Counsel is also admonished, again, to include the requisite showing of good cause when requesting to modify any case management deadline. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *see also* March 14 Order, Dkt. 27.

**ORDER**

**IT IS ORDERED:**

1.  Plaintiff's Motion to Compel (Dkt. 32) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.  Defendant shall expand its search of employee personnel files to include an additional three (3) departments.

b.  Defendant shall conduct a search of the emails of fifteen (15) custodians. The parties shall meet and confer to reach agreement upon the appropriate search method, search parameters, search terms, and list of custodians to be included in the search.

c.  Defendant shall produce Celia McKenzie for a deposition no later than **June 2, 2017**, at a date and time mutually agreed upon by the parties. The parties shall promptly schedule the deposition.

d.  Plaintiff's request to compel Campbell's meeting notes is **DENIED**.

e.  Plaintiff's request for a Rule 30(b)(6) deposition is **DENIED**.

2.  The Joint Motion for Extension of Dispositive Motion and Mediation Deadlines (Dkt. 32) is **GRANTED**. The new deadline for completion of mediation is May 5, 2017. The dispositive motion deadline is hereby vacated and shall be reset by separate order.

3.  No later than **May 8, 2017**, Plaintiff shall submit the appropriate motion to extend the discovery deadline. The motion should include a proposed revised discovery deadline.

DATED: May 3, 2017

_____
B. Lynn Winmill
Chief Judge
United States District Court